UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORA W.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C20-6080-SKV

ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1970, has a high school education, and has worked as a stock clerk. AR 2191. Plaintiff was last gainfully employed in 2013. AR 2213, 2218.

Plaintiff applied for benefits in 2014, alleging disability as of September 7, 2013. AR 170. Plaintiff's applications were denied initially, on reconsideration, and by a 2017 ALJ decision. AR 169, 183, 31-43. On appeal to this Court, the case was remanded for

reconsideration of Plaintiff's testimony and two medical opinions. AR 2280-95. On remand, after the ALJ conducted a hearing in July 2020, the ALJ issued a decision finding Plaintiff not disabled. AR 2177-93, 2202-43.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff did not engage in substantial gainful activity between the September 2013 alleged onset date through the December 31, 2018, date last insured.

**Step two**: Plaintiff has the following severe impairments: right ankle osteoarthritis, degenerative joint disease, status-post surgery; left wrist disorder, including left wrist fracture and left carpal tunnel syndrome, status-post open reduction internal fixation (ORIF) and carpal tunnel release; knee disorder, including degenerative joint disease and status-post bilateral knee surgery; reflex sympathetic dystrophy; diabetes mellitus with peripheral neuropathy and gastroparesis; asthma; obesity; hypertension; pulmonary embolism; chronic infections of the skin or mucous membrane; obstructive sleep apnea; status-post left ear tympanoplasty; depressive disorder; and anxiety disorder.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**: Plaintiff can perform sedentary work, using a cane for walking. She cannot reach overhead with the right upper extremity. She can frequently reach at or below shoulder level bilaterally. She can frequently handle and finger bilaterally. She can occasionally stoop, but could not crouch, crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds. She must avoid concentrated exposure to temperature extremes, hazards, and vibrations. She must avoid moderate exposure to fumes, odors, gases, and dust. She requires ear protection in a loud environment. She could perform unskilled, repetitive, routine tasks. She would be off-task 15% of the time and absent once per month.

**Step four**: Plaintiff cannot perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR at 2177-93. Plaintiff appealed this final decision of the Commissioner to this Court. Dkt. 3.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

# LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# DISCUSSION

Plaintiff argues the ALJ erred by finding her conditions did not meet a listed impairment, and by discounting her testimony and three medical sources' opinions. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

### A. The ALJ Erred by Discounting Plaintiff's Testimony

Plaintiff contends the ALJ erred by discounting her physical symptom testimony of difficulty walking, lifting, carrying, and using her hands, and need to recline much of the day. Dkt. 16 at 22-23.[3]

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ discounted Plaintiff's physical symptom testimony based on conflict with the medical evidence and improvement with treatment. AR 2185-86.

#### 1. Medical Evidence

"Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). However, mere "lack of medical evidence cannot form the sole basis for discounting pain testimony[.]" *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The Commissioner contends medical evidence contradicts Plaintiff's allegation that she can only "walk 12 feet before needing to rest." Dkt. 18 at 4 (citing AR 130, 132, 143, 443). In a July 2014 Function Report, Plaintiff stated she can walk "12 ft" before needing to rest "5 min[utes]" before resuming walking. AR 443. In May 2016, Plaintiff testified she can walk "[u]p and down [her] driveway," which is "about maybe 50 feet" long. AR 143, 144. The Commissioner cites physical therapy records showing Plaintiff was able to walk a maximum of

---

[3] The Commissioner defends the ALJ's assessment of Plaintiff's mental health as well, but Plaintiff does not challenge this. *See* Dkt. 18 at 5.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

between 95 and 230 feet. AR 2609, 2629-30. However, she required supplemental oxygen to do so because her lips and fingernail beds turned blue, and her oxygen levels decreased. *Id*. These records did not contradict Plaintiff's testimony that she could only walk shorter distances without supplemental oxygen.

The Commissioner's contention that medical evidence contradicts Plaintiff's allegation she "needed a cane to walk" at all times does not accurately reflect the record. Dkt. 18 at 4. Plaintiff testified she "sometimes do[es]n't use" the cane because "it hurts [her] left wrist to use it." AR 2226. When walking around her home, she holds on to couches, chairs, and installed grab bars. AR 2225-26. Plaintiff's testimony thus is not contradicted by reports she does not always use a cane or by medical evidence that, for example, at times her gait was steady or was not neurologically abnormal. *See, e.g.*, AR 2958, 3026, 3986.

Conflict with medical evidence was not a clear and convincing reason to discount Plaintiff's testimony.

### 2. Improvement with Treatment

Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ discounted Plaintiff's pain testimony because pain medications improved her ability to function. AR 2186. The Commissioner concedes that "the medication that improved [Plaintiff's] functioning was an opiate that she was advised to stop taking and eventually weaned off." Dkt. 18 at 6. However, the Commissioner contends there was no evidence Plaintiff's functioning deteriorated after stopping the medication. *Id*. The Commissioner's contention is not supported by substantial evidence. The only record cited where Plaintiff had a "normal, non-

ORDER REVERSING THE COMMISSIONER'S
DECISION - 5

antalgic gait, requiring no assistive devices" was when she was on opiates. AR 1779 (February 2016 treatment note). The record is replete with evidence of worsening after that time. *See, e.g.*, AR 2046 (in March 2017, Plaintiff has "pain [and] patellar instability and is using a cane"). Improvement with pain medication was not a clear and convincing reason to discount Plaintiff's testimony.

The ALJ discounted Plaintiff's testimony of left wrist impairments because ORIF surgery and carpal tunnel release surgery reduced her symptoms. AR 2185-86. After ORIF surgery, the Commissioner contends treatment records show "a well-healed scar, improved range of motion of the wrist, full motion in her fingers, slight weakness in grip strength, and fully intact neurovascular function." Dkt. 18 at 6 (citing AR 2117). None of these clinical findings, however, contradict Plaintiff's testimony of pain. After carpal tunnel surgery in March 2016, Plaintiff's "[h]and pain [was] decreasing," but not resolved. AR 1792. November 2016 treatment notes show left wrist pain and tenderness continued. AR 2029. Substantial evidence does not support the ALJ's finding that Plaintiff's symptoms were effectively controlled. Improvement with treatment was not a clear and convincing reason to discount Plaintiff's testimony of left wrist pain.

The Court concludes the ALJ erred by discounting Plaintiff's testimony without a clear and convincing reason.

**B. The ALJ Erred in Evaluating Whether Plaintiff's Impairments Met or Equaled a Listed Impairment**

    **1.    Listing 1.02**

Plaintiff contends the ALJ erred by finding her knee impairments did not equal Listing 1.02. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory

findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526). *See also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing).

Listing 1.02, "[m]ajor dysfunction of a joint(s)," can be established by showing "gross anatomical deformity (e.g., subluxation, … instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion," and "findings on appropriate medically acceptable imaging of joint space narrowing" with "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle) resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

At a July 2017 hearing, Board-certified orthopedic surgeon Jeffrey Hansen, M.D., testified Plaintiff's knee impairment equaled Listing 1.02. AR 75-76. He addressed several of the elements of Listing 1.02. Dr. Hansen identified X-ray imaging showing "subluxation of the patella [and] severe loss of the joint space." AR 67. He testified the record shows chronic knee pain and "quite limited" range of motion. AR 68, 67 ("She persists with symptoms of pain in her right knee."). However, Dr. Hansen did not expressly address inability to ambulate effectively. In fact, Dr. Hansen testified, even with Plaintiff's knee and other conditions, she could walk ten minutes at a time and could stand and walk a total of two hours per day. AR 71, 80. Plaintiff herself testified she can walk up and down her approximately 50-foot driveway. AR 143-44.

"Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). "[E]xamples of ineffective ambulation include, but are not limited

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, [or] the inability to carry out routine ambulatory activities, such as shopping and banking[.]" *Id.* at § 1.00(B)(2)(B)(2).

Plaintiff contends her conditions equal the listing because use of a cane is medically necessary, and is also difficult because of her left wrist impairments. Dkt. 16 at 7. Treatment notes regularly describe Plaintiff as ambulating with a cane. *See, e.g.*, AR 2041 ("using a cane for ambulation"). However, the ALJ concluded that "the need to use a single point cane by itself would not meet the definition of 'inability to ambulate effectively,' as it is described under section 1.00B2b(2)[.]" AR 2181. Plaintiff contends the need for two canes is part of a non-exhaustive list of examples. Dkt. 19 at 3. While that is true, the ALJ reasonably declined to conclude that a *lesser* limitation of needing a single cane was equivalent to the examples given in the regulations, such as needing two canes.

Because Plaintiff has not established ineffective ambulation, the Court concludes the ALJ did not err by finding her conditions did not meet or equal Listing 1.02.

### 2.     Listing 8.04

On Plaintiff's previous appeal, the Court directed the ALJ on remand to "consider whether Plaintiff's history of persistent skin infections with both extensive fungating and extensive ulcerating skin lesions meets or equals Listing 8.04[.]" AR 2291. On remand, the ALJ listed several of Plaintiff's impairments, including "chronic infections of the skin," and concluded they "were not severe enough to meet or medically equal the listings[.]" AR 2180. This conclusory assertion does not satisfy the Court's direction.

The Commissioner contends any error was harmless because Plaintiff has not shown her conditions met or equaled Listing 8.04. Listing 8.04 applies to "extensive" lesions that "persist

for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.04. "Extensive" lesions are defined as those that "involve multiple body sites or critical body areas, and result in a very serious limitation." *Id.* at § 8.00(C)(1). Examples of extensive lesions "include but are not limited to" lesions that interfere with the motion of joints, lesions on both palms that interfere with fine and gross motor movements, and lesions on the soles, perineum, or groin that interfere with walking. *Id.*

Plaintiff contends her skin condition equaled the listing because her lesions were present on multiple body areas, including groin, legs, abdomen, ear, scalp, chest, arm, and neck, the lesions lasted well over three months despite treatment, and the pain she experienced from them was seriously limiting. Dkt. 19 at 4-5. The Commissioner argues Plaintiff's skin conditions did not match the examples given in the regulation and thus were not *per se* disabling. Dkt. 18 at 4. While that may be true, her conditions were also not *per se* non-disabling. It was the ALJ's role to assess the evidence and explain his decision to allow for meaningful review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[T]he agency [must] set forth the reasoning behind its decision in a way that allows for meaningful review."). The ALJ's conclusory statement that Plaintiff's conditions did not equal a listing did not meet this standard.

The Court concludes the ALJ erred by failing to properly address Listing 8.04.

**C. The ALJ Erred in Evaluating the Medical Opinion Evidence**

    **3.   Treating Physician Robert Caulkins, M.D., and Treating Orthopedist Lance Bear, M.D.**

When a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

In December 2013, Dr. Caulkins filled out a Disability Questionnaire, opining Plaintiff had "multiple medical problems that result in very freq[uent] missed days making employment impractical." AR 689.

In February 2016, Dr. Caulkins filled out a Disability Impairment Questionnaire, opining Plaintiff could sit less than an hour and stand and/or walk less than an hour per day, and needed to elevate her right leg to waist level while sitting. AR 1775. He opined placing Plaintiff in a competitive work environment would likely cause "aggravation of her musculoskeletal issues." AR 1776.

In May 2020, based on "severe knee arthritis," Dr. Bear opined Plaintiff could stand/walk two hours and sit four hours per day. AR 2492. He opined Plaintiff would miss three to five days of work per month. AR 2493.

The ALJ gave "little weight" to the opinions by Dr. Caulkins and Dr. Bear because he found they were based partly on conditions that did not cause significant physical limitations. AR 2187-89; *see* Dkt. 18 at 9.[4] The ALJ's finding was not supported by substantial evidence.

The Commissioner argues ankle and knee problems did not cause significant physical limitations because Plaintiff usually had good range of motion. Dkt. 18 at 9. However, good range of motion is not inconsistent with pain, which appears to be the basis for the doctors' opinions. *See* AR 1774 (pain in knees and ankle aggravated by walking/standing), 2493 ("severe knee arthritis").

---

[4] The ALJ also discounted the opinions based on reliance on Plaintiff's self-reports. AR 2189. The Commissioner does not defend this reason, apparently conceding it is erroneous. Dkt. 18 at 9. Because the ALJ erred by discounting Plaintiff's self-reports, discounting medical opinions based on them was also error. *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (an ALJ may reject medical opinion based on a claimant's self-reports if the ALJ properly found the claimant not credible).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10

The Commissioner argues diabetic neuropathy did not cause significant physical limitations. Dkt. 18 at 9. However, none of the opinions appear to be based on neuropathy. Dr. Caulkins' 2013 opinion did not list neuropathy among Plaintiff's disabling conditions. AR 688. Dr. Caulkins' 2016 opinion listed neuropathy among Plaintiff's diagnoses, but expressly based limitations on musculoskeletal issues. AR 1773, 1776. Dr. Bear's 2020 opinion did not mention neuropathy. AR 2492-93. Lack of limitations caused by neuropathy was not a specific and legitimate reason to discount Dr. Caulkins' and Dr. Bear's opinions.

The Commissioner also notes normal cardiovascular and respiratory function. Dkt. 18 at 9. There is no indication Dr. Caulkins' 2016 or Dr. Bear's 2020 opinions were based on cardiovascular or respiratory impairments. Dr. Caulkins did not list asthma among Plaintiff's diagnoses. AR 1773. Dr. Bear based limitations on knee arthritis. AR 2493.

However, Dr. Caulkins' 2013 opinion listed asthma among Plaintiff's "disabling condition(s)." AR 688 ("1) Bipolar II disorder, depression predominant, 2) D[egenerative] J[oint] D[isease] rt knee & rt ankle, 3) Exogenous obesity, 4) Asthma, 5) Recurrent cellulitis infections [secondary] to diabetes."). Because Dr. Caulkins attributed limitations to "multiple medical problems" without further explanation, the ALJ reasonably concluded it was impossible to discern how each diagnosis contributed to the opined limitations. AR 688-89. This was a specific and legitimate reason to discount Dr. Caulkins' 2013 opinion.

The ALJ erred by discounting Dr. Caulkins' 2016 and Dr. Bear's 2020 opinions on the grounds that they were based on conditions that did not cause significant limitations. The ALJ also provided reasons specific to each opinion. The Court will address each opinion in turn.

The ALJ discounted Dr. Caulkins' 2016 opinion because it was issued after the new impairment of left carpal tunnel syndrome was diagnosed, and before surgery resolved that

impairment.  AR 2190.  This was a specific and legitimate reason to discount the lifting and handling limitations Dr. Caulkins opined, because her left wrist impairments were still changing at the time.  However, this was not a valid reason to discount Dr. Caulkins' remaining opinions, such as standing, walking, and sitting limitations.  *See* AR 1775.

The ALJ discounted Dr. Bear's 2020 opinions because they were issued about a year and a half after Plaintiff's date last insured.  AR 2190.  However, Dr. Bear based the opined limitations on knee arthritis.  AR 2493.  Neither the ALJ nor the Commissioner identify any evidence Plaintiff's knee arthritis worsened significantly in that time.  The Commissioner cites *Macri v. Chater*, where the Ninth Circuit held the "opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status … is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam."  93 F.3d 540, 545 (9th Cir. 1996).  In *Macri*, where there was no evidence before the date last insured of psychiatric impairment and the psychiatrist "examined and diagnosed [the claimant] well after his injury and the expiration of his disability insured status," the Ninth Circuit upheld the ALJ's finding that the psychiatrist's report was "not reliable" evidence of impairments before the date last insured.  *Id*.  Here, however, there is no dispute Plaintiff suffered from degenerative joint disease of the knee before the date last insured, as the ALJ included it among Plaintiff's severe impairments.  AR 2180.  Moreover, Dr. Bear had treated Plaintiff since 2014.  *See* AR 1453.  On this record, the ALJ erred by discounting Dr. Bear's opinions based on the date they were issued.

The ALJ stated Dr. Bear's opinions "appear to rely, in part, on new impairments that the claimant has developed since the date last insured."  AR 2190.  The ALJ failed to identify any evidence for this finding, however, and the Commissioner does not defend it.  The ALJ's finding was not supported by substantial evidence.

The Court concludes the ALJ did not err by discounting Dr. Caulkins' 2013 opinions or his 2016 opinions related to the left wrist. However, the Court concludes the ALJ erred by discounting Dr. Caulkins' remaining 2016 opinions and Dr. Bear's 2020 opinions.

### 4. Non-examining Physician Dr. Hansen

"The weight afforded a non-examining physician's testimony depends on the degree to which he provides supporting explanations for his opinions." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal alterations omitted). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

Plaintiff contends the ALJ erred by discounting Dr. Hansen's opinion that she is limited to occasional handling and frequent feeling.[5]

The ALJ rejected Dr. Hansen's opinion because Plaintiff's wrist condition improved with surgery. AR 2187. Three months after the November 2014 ORIF surgery, Plaintiff reported "mild discomfort with daily activities." AR 2117. Six weeks after the March 2016 carpal tunnel release surgery, Plaintiff reported her "[h]and pain is decreasing." AR 1792. The Commissioner contends this reference to specific evidence meets the standard for rejecting a non-examining physician's opinion.

However, Plaintiff points to evidence her left hand pain was not fully resolved by these surgeries. Dr. Hansen explained that the opined wrist limitations were not based on carpal tunnel, but on "residual of a wrist fracture with arthritis[.]" AR 65. Dr. Hansen pointed to evidence that, eight months after ORIF surgery to treat the wrist fracture, Plaintiff "developed

---

[5] Plaintiff also mentions frequent fingering, but the ALJ included this limitation in the RFC. AR 2183.

1   pain" over the wrist, and had "pain with pinching and gripping." AR 1467.  He also identified a

2   November 2016 CT scan showing osteoarthritis.  AR 2029.  While the ALJ may discount a non-

3   examining doctor's opinion by referring to specific evidence, in doing so the ALJ may not ignore

4   "significant probative evidence" or reject it without explanation.  *Flores v. Shalala*, 49 F.3d 562,

5   571 (9th Cir. 1995).  The evidence Dr. Hansen identified was significant and probative because it

6   was objective medical evidence that supported his opinion and undermined the ALJ's finding

7   that Plaintiff's left wrist symptoms resolved with surgery.  Because the ALJ failed to address this

8   evidence, the Court cannot conclude the ALJ's finding was supported by substantial evidence.

9         The Court concludes the ALJ erred by discounting Dr. Hansen's opinion of handling and

10  feeling limitations.

11        **D.**      **Scope of Remand**

12        Plaintiff requests remand for benefits or, in the alternative, for further administrative

13  proceedings.  Dkt. 16 at 24.  Remand for an award of benefits "is a rare and prophylactic

14  exception to the well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044

15  (9th Cir. 2017).  The Ninth Circuit has established a three-step framework for deciding whether a

16  case may be remanded for an award of benefits.  *Id.* at 1045.  First, the Court must determine

17  whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence.  *Id.*

18  (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine "whether the record has

19  been fully developed, whether there are outstanding issues that must be resolved before a

20  determination of disability can be made, and whether further administrative proceedings would

21  be useful."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)

22  (internal citations and quotation marks omitted).  If the first two steps are satisfied, the Court

23  must determine whether, "if the improperly discredited evidence were credited as true, the ALJ

would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The first step is satisfied. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, Dr. Caulkins' 2016 opinions, Dr. Bear's 2020 opinions, Dr. Hansen's handling limitations, and evidence regarding chronic skin infections.

The second step is also satisfied, as the ALJ has resolved the relevant conflicts in the record. The only medical opinion in the record that conflicts with Dr. Caulkins', Dr. Bear's, or Dr. Hansen's opinions is the opinion of State agency consultant Drew Stevick, M.D. AR 191-93. Dr. Stevick opined Plaintiff could perform light work, standing/walking four hours per day, with no manipulative limitations. AR 191-92. While the ALJ assigned "partial weight" to Dr. Stevick's opinions, he rejected the opinions on light work, standing/walking, and manipulative activities, imposing greater limitations in the RFC. AR 2186. The ALJ limited Plaintiff to sedentary work and using a cane while walking, and imposed reaching, handling, and fingering limitations. AR 2183. Because the ALJ rejected the pertinent parts of Dr. Stevick's opinion, no outstanding issues remain to be resolved.

The third step is also satisfied. Dr. Caulkins in 2016 and Dr. Bear in 2020 opined Plaintiff would miss work at least three days per month. AR 1777, 2493. Vocational expert testimony that the ALJ accepted established that a person whose absences were "consistently exceeding one day a month" could not maintain employment. AR 87; *see also* AR 152. In addition, Dr. Caulkins in 2016 opined Plaintiff would need to elevate her right left to waist level while sitting. AR 1775. A vocational expert testified that would preclude competitive

employment. AR 152. Accordingly, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

Plaintiff meets all three requirements to establish that remand for benefits would be appropriate. The only remaining question is whether the Court should exercise its discretion to remand for further administrative proceedings. The Court should do so "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. The only evidence the Commissioner identifies as creating such doubt is Dr. Stevick's opinion, which the ALJ rejected in relevant part. Dkt. 18 at 12. The Court concludes that the record does not create serious doubt as to whether Plaintiff is disabled. Accordingly, the Court remands for an award of benefits.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits under sentence four of 42 U.S.C. § 405(g).

Dated this 30th day of July, 2021.

S. KATE VAUGHAN
United States Magistrate Judge